## AMOS H. VAN HORN v. HENRY F. GÖKEN.

An execution, issued on a judgment recovered for the price of goods sold by the plaintiff to the defendant therein, was levied upon those goods while they lay in premises demised to the defendant. The defendant owed rent for the premises, and due notice thereof was given by the landlord to the plaintiff and officer having the writ. The goods were sold by virtue of the execution, without being actually removed, and were bought by the plaintiff. On the plaintiff's attempting to remove the goods without paying the rent, the landlord refused to permit him to do so. *Held*—that the landlord was not guilty of an illegal conversion, and that he had a right to prevent the removal by the plaintiff until the arrears of rent were paid.

---

On *certiorari* to the Essex Pleas. The facts are fully set forth in the opinion.

Van Horn v. Göken.

Argued at June Term, 1879, before Justices DEPUE, VAN SYCKEL and DIXON.

For the plaintiff in *certiorari*, *J. V. Kernan*.

For the defendant, *C. E. Hill*.

The opinion of the court was delivered by

DIXON, J.   Morrow hired of the defendant, Göken, an office in Newark, which he furnished with goods bought of Van Horn, the plaintiff.   On April 20th, 1878, he absconded, without paying for the goods, and leaving a family residing in this state and not having $200 worth of property.   On April 30th, 1878, the plaintiff sued out of the District Court of Newark an attachment against Morrow for the price of the goods, by virtue of which the goods were attached, and on December 24th, 1878, they still remaining on the demised premises, were sold to the plaintiff under execution in that suit.   On July 1st, 1878, a quarter's rent, $21.88, became due from Morrow to the defendant for the office so hired, and before the sale the defendant gave written notice of that fact to the constable having the execution and claimed his rent, and at the sale gave notice to the bidders to the same effect and announced that he would not permit a removal of the goods until the rent was paid.   On December 14th, 1878, the defendant had distrained the goods for the rent.   The plaintiff, after his purchase, demanded his goods of the defendant, and, upon the defendant's refusing to permit him to remove the goods unless the rent was paid, brought an action of trover and conversion in the Second District Court in Newark. In this suit he recovered $30, the value of the goods, on the ground that the landlord's lien under the fourth and fifth sections of the landlord and tenant act extended only to goods liable to be sold under distress for rent, and that these goods were exempt from such a sale, because the tenant's family was entitled to $200 worth, but that they were not exempt from the plaintiff's execution, because that was for the price of these very goods.   On appeal to the Common

Pleas of Essex, this recovery was affirmed, and is now before us by *certiorari*.

The distress attempted by the landlord on December 14th, 1878, did not better his position. The goods were then in the custody of the law, under either the attachment or the execution, and so were not distrainable. *Gilb. Dist.* 44; *Bradb. Dist.* 214; *Alexander* v. *Mahon*, 11 *Johns.* 185.

The defendant, therefore, must stand, if at all, upon his right by virtue of the fourth section of the landlord and tenant act. *Rev., p.* 570.

The language of this section supports his claim. It enacts that "no goods or chattels whatsoever, lying or being, or which shall lie or be in or upon any messuage, lands or tenements, which are or shall be leased for term of life or lives, year or years, at will or otherwise, shall be liable to be taken by virtue of any execution, attachment or other process, unless the party at whose suit the said execution or other process be sued out, shall, before the removal of such goods from off the said premises, by virtue of such process, pay to the landlord of the said premises, all rent due for said premises, at the time of taking such goods or chattels by virtue of said process, or which shall have accrued up to the day of the removal of the goods from off the said premises, whether by the terms of lease the day of payment shall have come or not * * * provided the said arrears of rent do not amount to more than one year's rent." Thus its terms forbade the plaintiff's removing the goods in controversy and justified the defendant in keeping them on the demised premises until the rent demanded should be paid.

But the plaintiff insists that this statute was intended only to protect the landlord's right of distress, and that therefore in construction it must be so limited as to apply merely to cases where that right exists.

The enactment originated as the first section of 8 *Anne*, c. 14, and many *dicta* of the English judges indicated that they regarded its scope as being co-extensive with the right of distress; but no decision either restricted or enlarged the

fair meaning of its terms, so as to make it exactly correspond with that right. On the other hand, in the late case of *Cox* v. *Leigh, L. R.*, 9 *Q. B.* 333, where it was argued that the plain design of the statute was to guard the right to distrain, and that, as the sixth section of this same 8 *Anne, c.* 14, authorized a distress during six months after the determination of the lease under certain circumstances, therefore the landlord's right against executions should, under like conditions, have the same duration, the court, nevertheless, refused to construe these sections together, so as to make the latter right commensurate with the former, and, declaring itself bound by the words of the law, decided that the execution creditor was postponed only in case of an existing tenancy.

In the legislation of New Jersey the provision now under review first appeared as the fourth section of "An act concerning landlords and tenants," passed March 10th, 1795, (*Paterson's L., p.* 163,) and has ever since remained a part of that statute, while all our legislative regulations on the subject of distress were embodied in "An act concerning distresses," passed March 16th, 1795, (*Paterson's L., p.* 172,) which, with its supplements, has always been a separate law. Notwithstanding this disconnection, this court, in *Ryerson* v. *Quackenbush*, 2 *Dutcher* 236, declared that these acts of March 10th and March 16th, 1795, were to be regarded as cotemporaneous, and to be construed, each in relation to the provisions of the other, so that, it was said, the removal by the sheriff of a stranger's goods from the demised premises would not render the sheriff liable to the landlord, because the latter had no right of distress in such goods, and it was adjudged that a levy and sale of the tenant's goods upon the premises, without actual removal, did render the sheriff liable as for a removal, because, by terminating the tenant's title, it effectually defeated the landlord's right of distress, and thus deprived him of that priority over execution creditors which the statute was intended to give.

This decision, however, does not go far enough to maintain the present plaintiff's contention. He insists not merely that

these two statutes, thus passed at the same session of the legislature, shall be construed together, but that an exemption, given to the tenant by a supplement to the "Act concerning distresses," approved March 18th, 1851, (*Pamph. L., p.* 347,) as amended in the revision of 1874, (*Rev., p.* 313, § 24,) shall restrict the landlord's right against creditors as well as his right of distress. This supplement enacted that the goods and chattels mentioned in the eighth section of the original act, as by law privileged from distress for rent, should thereafter be deemed and taken to be all such goods and chattels as there were or might thereafter be by any law of this state reserved to any debtor for the use of his family, against his creditor, and not liable to be seized or taken by virtue of any execution or civil process issued out of any court of this state. The character of the exemption thus afforded is shown in the supplement to the execution act passed at the same session, (March 14th, 1851, *Pamph. L., p.* 278,) with the modification made by the explanatory act of February 13th, 1852, (*Pamph. L., p.* 36,) and the revision simply compiles these provisions in declaring that goods and chattels of every kind, not exceeding in value the sum of $200, the property of any tenant having a family residing in this state, shall be reserved for the use of his family, and shall not be liable to be sold as or for a distress for rent; and it thereupon provides for the selection, on behalf of the tenant's family, of the goods to be reserved out of the inventory made in the levying of a distress.

Now, in the interpretation of these supplements, it is noticeable that, not only by their titles, but also in their enactments, they are limited to distresses, and in their present shape the machinery requisite to protect the privilege which they purport to give is found only in proceedings to distrain. When these laws were passed, however similar the landlord's right of distress and his right against executions might be, still they were distinct; and it should seem that if the legislature intended to abridge both, language applicable to one only would not have been employed. For this reason, I am of

opinion that these supplements do not impair the right which the landlord now sets up.

But, even if this view were incorrect, there is another ground on which it should be held that the alleged exemption will not avail this plaintiff. The statutes do not point out specific chattels or classes of chattels which are to be withheld from the landlord, but merely afford to the tenant and his family a privilege under which they may select what they desire out of goods otherwise liable for the rent. This privilege is personal, meant solely for their benefit, and if, for any cause, they cannot or will not use it, no one else is entitled to its enforcement. As between the landlord and the execution creditor, the law prefers the former; prefers him, even as to goods for the price of which the creditor's judgment was recovered. For the supplement to the execution act (*Pamph. L.*, 1851, *p.* 278, § 5,) did not give to a creditor so claiming any greater right to such goods than he had before, but merely saved his pre-existing right to levy thereon from the privilege which it gave the debtor against other executions. But, as that pre-existing right had always been subject to the landlord's claim for rent, so it remained, and still remains.

The question whether a landlord may, in addition to his remedies against the party suing out the process and the officer executing it, prohibit the removal of the goods until his rent is paid, has not been suggested by counsel. Perhaps, in view of the decision in *Ryerson* v. *Quackenbush, ubi supra,* that a levy and sale are equivalent to a removal, such a right may not exist against a stranger to the writ. But against the party, purchasing under his own execution, I think the remedy may well be sustained, and literal effect be given to the statute. He may be regarded as acquiring by the sale a title subject to his duty to pay the rent, a title authorizing him to actually remove the goods only after he shall have done what the law says he ought to do before removal. Strangers may buy upon the assumption that the officer will pay the rent out of the proceeds of sale, and be injured if their goods be with-

held, but to the party it is immaterial which course be pursued.

The conclusion, therefore, is that the defendant's refusal to permit the plaintiff to remove the goods from the demised premises before his rent was paid, was not an unlawful conversion, and hence that the judgment below should be reversed, with costs.